## THE CITY OF LOWELL.

### (Circuit Court of Appeals, Second Circuit. March 10, 1913.)

### No. 151.

SHIPPING (§ 16*)—REGULATION OF STEAM VESSELS—NUMBER OF PASSENGERS—VIOLATION OF STATUTE.

    A libel against a steam vessel by the United States to recover the penalty prescribed by Rev. St. § 4499 (U. S. Comp. St. 1901, p. 3060), for carrying a greater number of passengers than allowed by her certificate, in violation of sections 4465, 4466 (U. S. Comp. St. 1901, p. 3046), *held* not sustained by the evidence.

    [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 30–44; Dec. Dig. § 16.*]

Appeal from the District Court of the United States for the Southern District of New York; George C. Holt, Judge.

Libel by the United States against the steam vessel City of Lowell, the New England Navigation Company, claimant. Decree for respondent, and libelant appeals. Affirmed.

The libel was filed against the steam vessel City of Lowell to recover a penalty of $500 for alleged violation of the Revised Statutes regulating the number of passengers to be carried by such vessels. The sections in question are 4465, 4466, and 4499 (U. S. Comp. St. 1901, pp. 3046, 3060).

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

Henry A. Wise, U. S. Atty., and Addison S. Pratt, Asst. U. S. Atty., both of New York City, for appellant.

Charles M. Sheafe, Jr., of New York City, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The City of Lowell was allowed by law to carry 1,800 passengers on excursions and the government charges that on August 7, 1910, she made an excursion up the Hudson river, to Poughkeepsie and return, having on board passengers in excess of that number. This the appellee denies. The sole question, therefore, is one of fact and unless the finding of the trial judge is clearly against the weight of evidence, it should not be disturbed. The government called but one witness, an inspector of customs, who testified that he stood at the gangplank from the time the first passenger went aboard until the gangplank was pulled in, and that he counted all the passengers, checking them by means of a machine, and found that 1,967 had been taken aboard the vessel—or 167 more than the law permitted.

On the other hand, the vessel employed two counters, one relieving the other, who used a checking machine similar to the one used by the government inspector, and they made the total number of passengers 1,613. The appellee also proved that only 1,599 tickets were sold for this excursion, all but 2 of which were taken up by the vessel's employés. Of these tickets, 100 represented half tickets for children between 5 and 12 years of age. It also appears that when the limit of 1,600 was reached, the appellee refused to sell any more tickets, although there was a large crowd on the pier, clamoring to be permitted to go on board.

It cannot be said upon this testimony that the government has proved its case by a fair preponderance of evidence. It must be admitted that the evidence shows that the appellee was endeavoring in good faith to observe the law. It sold but 1,600 tickets, which was 200 less than the number of passengers it was permitted to carry. This left a margin of 200 which allowed for infants in arms and other persons who might get on board through mistake or otherwise. The margin would seem to be ample to cover all contingencies. In short, the government's case rested solely upon the testimony of one witness and the accuracy of the machine used by him. The appellee directly contradicts this witness by a count taken by a similar machine. Not only so, but it proves that it sold only 1,600 tickets. It cannot be said that there was error in finding for the appellee.

The decree is affirmed.